# Exhibit G

Case 3:22-mc-00020-L-BH   Document 2-8   Filed 03/18/22   Page 2 of 17   PageID 148

Edelson, P.C. v. Bandas Law Firm, P.C., Not Reported in Fed. Supp. (2018)

2018 WL 6588436
Only the Westlaw citation is currently available.
United States District Court, S.D.
Texas, Corpus Christi Division.

EDELSON, P.C., Plaintiff,
v.
BANDAS LAW FIRM, P.C., et al, Defendants.

Misc. Action No. 2:18-MC-980
|
Signed 12/14/2018

**Attorneys and Law Firms**

Alexander G. Tievsky, Ryan D. Andrews, Edelson PC, Chicago, IL, for Plaintiff.

Eric Steven Stewart, Huseman Dodson & Hummell, John Patrick Swallow, Huseman Law Firm, PLLC, Corpus Christi, TX, for Defendants.

## OPINION AND ORDER GRANTING WITHOUT PREJUDICE MOTIONS TO QUASH

B. JANICE ELLINGTON, UNITED STATES MAGISTRATE JUDGE

*1 Edelson PC ("Edelson"), an Illinois law firm, is suing Bandas Law Firm, PC, and Christopher Bandas (collectively, "Bandas") in the Eastern Division of the United States District Court for the Northern District of Illinois. Edelson filed a subpoena seeking records from First Community Bank (FCB) in Corpus Christi, Texas relating to Bandas's client trust account. Bandas and FCB filed motions to quash the subpoena in this Court on August 8, 2018 (D.E. 1, 2). For the reasons set forth below, the motions to quash the subpoena are granted, but Edelson may renew the request for a subpoena should circumstances warrant it in the future.

### BACKGROUND

Edelson is a law firm based in Illinois that frequently represents consumers in class action lawsuits. Bandas is a law firm based in Corpus Christi, Texas that routinely represents parties in class action lawsuits who object to proposed settlements. *Edelson PC v. Bandas Law Firm PC, No. 16-C-11057, 2018 WL 3496085 (N.D. Ill. 2018)* (slip op.). Edelson sued Bandas in federal court in Illinois, alleging that Bandas and two other attorneys, one from Illinois and one from California, represent "professional objectors" who file frivolous objections to class action lawsuits in an effort to leverage lucrative payoffs by threatening to draw out class litigation through trial and appellate proceedings. *Id.* at *1. Edelson also named as defendants one person in California and twenty John Doe defendants who allegedly identify class action lawsuits and serve as class objectors. *Id.*

Edelson sued the defendants for violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961-68 and also asserted claims under Illinois state law for abuse of process and the unauthorized practice of law.[1] *Id.* Edelson urged the court to label Bandas and the other attorney defendants "vexatious litigants" and to issue a permanent injunction pursuant to the All Writs Act, 28 U.S.C. § 1651. *Id.* On February 6, 2018 the district court dismissed Edelson's RICO Act claims for failure to allege predicate acts of racketeering but reserved judgment pending briefing on whether it had subject matter jurisdiction to review Edelson's state law claims. *Id.*

Following a motion by Edelson to dismiss non-diverse defendants, the court dismissed the California attorney and the John Doe defendants from the lawsuit and determined that it had diversity jurisdiction and could hear Edelson's state law claims against Bandas. *Id.* at 7-8. The court then dismissed Edelson's abuse of process cause of action but retained the unauthorized practice of law cause of action, finding that the allegations were sufficient to state a plausible claim for relief. *Id.* at *8-11. The court also stated that Edelson was welcome to reassert its request for judicial action pursuant to the All Writs Act during the course of the litigation.

After the ruling by the Illinois district court, Edelson served a subpoena on FCB, asking for all documents related to any transfer of funds from any Bandas account to a list of 108 individuals and law firms (*See* Subpoena and Rider to Subpoena, D.E. 2-1). FCB moves to quash the subpoena on the following grounds: (1) The subpoena is defective because it contains two different compliance dates; (2) Responding to the subpoena may cause FCB to violate the Gramm-

Case 3:22-mc-00020-L-BH   Document 2-8   Filed 03/18/22   Page 3 of 17   PageID 149

Edelson, P.C. v. Bandas Law Firm, P.C., Not Reported in Fed. Supp. (2018)

Leach-Billey Act (GLBA), 15 U.S.C. § 6801; (3) Edelson has not provided evidence or assurance to FCB that it has complied with Section 59.006 of the Texas Finance Code; (4) The subpoena is overly broad because it asks FCB to produce documents not in its possession, custody, or control; (5) The subpoena is overly vague and ambiguous; (6) The subpoena is overly broad, burdensome, and even punitive as directed at FCB; (7) The subpoena asks FCB to disclose confidential commercial information; (8) The subpoena requests documents from January 1, 2008 to the present but FCB maintains wire transfer records for only five years and other records for only seven years; (9) The subpoena does not allow sufficient time to reply; (10) The subpoena seeks irrelevant documents; and (11) The subpoena requires the cost of production of documents to be borne by FCB.

 **\*2** Bandas argues the following in its motion to quash: (1) The records sought are confidential financial records; (2) The records are not relevant to the lawsuit as there are no pending claims for damages; (3) The only remaining cause of action in the lawsuit is for injunctive relief to prohibit Bandas from engaging in the unauthorized practice of law in Illinois and Bandas made an offer of judgment for injunctive relief; and (4) The request for documents is overly broad.

In response to the motion to quash, Edelson asserts the following: (1) It has the right to seek an injunction to stop Bandas from practicing law in Illinois; (2) It has the right to have Bandas declared a vexatious litigant under the All Writs Act; (3) It seeks only a limited number of relevant documents; (4) Documents showing the flow of money to and from Bandas are relevant; (5) The subpoena is targeted to gather only evidence Edelson needed to show that Bandas engaged in the unauthorized practice of law in Illinois; (6) FCB has not identified any protected privilege which warrants quashing the subpoena; and (7) Bandas does not have standing to quash the subpoena and fails to cite any authority in support of his motion.

## APPLICABLE LAW

### A. Bandas's Standing to Quash the Subpoena
Edelson argues that Bandas does not have standing to quash the subpeona. Pursuant to Rule 45, parties have limited standing to quash subpoenas served on non-parties. *Bounds v. Capital Area Family Violence Intervention Center, Inc.*, 314 F.R.D. 214 (M.D. La. 2016). A plaintiff cannot challenge a Rule 45 subpoena on the grounds that it is overly broad, seeks irrelevant information, or violates another person's privacy rights. *Id.* In order to challenge a subpoena issued to a non-party, the party must have either " 'possession of the materials subpoenaed' " or a " 'personal right or privilege with respect to the materials subpoenaed.' " *Jez v. Dow Chemical Co., Inc.*, 402 F.Supp.2d 783, 784-785 (S.D. Tex. 2005) (quoting *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979) ).

Bandas does not assert that it has in its possession the material subpoenaed. Thus, the arguments Bandas makes in its motion to quash will be considered only to the extent that it asserts a privilege related to the requested material.

### B. Unauthorized Practice of Law in Illinois
Edelson seeks a finding from the Illinois district court that Bandas has engaged in the unauthorized practice of law under the Illinois Attorney Act, 705 ILCS 205/1. Attorneys and law firms have standing to seek injunctive relief under the act because " 'the practice of law by an entity not licensed constitutes an infringement upon the rights of those who are properly licensed.' " *Edelson*, 2018 WL 3496085 at \*9 (quoting *Richard F. Mallen & Assoc., Ltd. v. Myinjuryclaim.com Corp.*, 769 N.E.2d 74, 76 (1st Dist. 2002) and *King v. First Cap. Fin. Servs. Corp.*, 828 N.E.2d 1155, 1168 (2005) ). There is no private right to seek money damages under the statute. *King*, 828 N.E.2d at 1168.

### C. All Writs Act
The All Writs Act, 28 U.S.C. § 1651, provides that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Act does not create jurisdiction in a district court, but empowers it only to issue writs " 'in aid of jurisdiction previously acquired on some other independent ground.' " *Singh v. Duane Morris LLP*, 538 F.3d 334, 341 (5th Cir. 2008) (quoting *Brittingham v. Comm'r*, 451 F.2d 315, 317 (5th Cir. 1971) ).

 **\*3** Under the Act, district courts retain "the inherent power to enter pre-filing orders against vexatious litigants." *Molski*

Case 3:22-mc-00020-L-BH   Document 2-8   Filed 03/18/22   Page 4 of 17   PageID 150

**Edelson, P.C. v. Bandas Law Firm, P.C., Not Reported in Fed. Supp. (2018)**

v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057 (9th Cir. 2007). When determining whether to issue a pre-filing injunction, courts look at (1) whether the litigant's history involves vexatious, harassing, or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, and in particular whether the litigant has an objective good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has caused an unnecessary burden on the courts; and (5) whether other sanctions would be sufficient to protect the courts and other parties. *Safir v. United States Lines, Inc.*, 729 F.2d 19, 24 (2d Cir. 1989). Edelson seeks the bank records to support its allegation that Bandas is a vexatious litigant and should be enjoined from filing lawsuits in Illinois.

**D. Effect of Offer of Judgment**
On August 10, 2018 Bandas served an offer of judgment on all counsel of record in accord with Fed. R. Civ. P. 68 (D.E. 1-3). Bandas offered to allow judgment to be entered against it, including a finding that it engaged in the unauthorized practice of law in Illinois and an order enjoining it from the further practice of law unless it obtains authorization from the Supreme Court of Illinois to practice law. In addition, Bandas agreed to entry of judgment for "costs then accrued," not including attorney's fees. The offer of judgment remains opens (D.E. 16 at pp. 2-3).

Edelson did not accept the offer of judgment and an unaccepted offer of judgment has no force. *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 666 (2016). "Like other unaccepted contract offers, it creates no lasting right or obligation." *Id.* Accordingly, although Bandas offered Edelson all relief sought, because Edelson did not accept the offer, the issue is not moot and adversity exists between the parties. *Id.*

**E. The Gramm-Leach-Billey Act (GLBA)**
FCB cites the GLBA, 15 U.S.C. § 6801, as implemented by Regulation P, 12 CFR § 1016, as grounds for quashing the subpoena. The GLBA provides that with some exceptions, a financial institution may not disclose to a nonaffiliated third party any nonpublic personal information unless the financial institution provides proper notice to the consumer. 15 U.S.C. § 6802 (a). Several exceptions to the prohibition of disclosures exist, including the following:

> to comply with Federal, State, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by Federal, State, or local authorities; or to respond to judicial process or governmental regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as authorized by law.

15 U.S.C. § 6802(e)(8).

FCB argues that compliance with the subpoena may violate the GLBA, which does not have a safe harbor provision. FCB further asserts that the judicial process exception of 15 U.S.C. § 6802(e)(8) is not settled as to civil subpoenas, citing *Landry v. Union Planters Corp.*, No. Civ. A. 02-3617, 2003 WL 21355462 (E.D. La. 2003). However, *Landry* did not directly address the issue of whether a civil subpoena requesting nonpublic personal information violates GLBA. Rather, the court found that the information requested was "blind" information, with all personal identifiers redacted. *Id.* at *6. Therefore, the customers' privacy was protected and the bank was protected from liability because the information did not constitute "nonpublic information." *Id.*

**\*4** A review of decisions regarding the direct application of § 6802(e)(8) to civil subpoenas shows that courts generally find that the GLBA does not provide a basis to quash a properly executed subpoena. *See, e.g., Sierra Equity Group v. White Oak Equity Partners, LLC*, 672 F.Supp.2d 1369, 1371 (S.D. Fla. 2009) (finding that the GLBA expressly permits the discovery of financial records so long as certain prerequisites, such as the obtaining of a subpoena, are met); *Marks v. Global Mortgage Group, Inc.*, 218 F.R.D. 492, 497 (S.D. W.Va. 2003) (finding that the GLBA permits disclosure of nonpublic information when responding to judicial process and encouraging courts to fashion protective orders to protect privacy of consumers' financial information); *United States ex rel. Rigsby v. State Farm Fire and Casualty*

Case 3:22-mc-00020-L-BH   Document 2-8   Filed 03/18/22   Page 5 of 17   PageID 151

Edelson, P.C. v. Bandas Law Firm, P.C., Not Reported in Fed. Supp. (2018)

Co., No. 1:06CV433-HSO-RHW, 2016 WL 2997428 at *1 (S.D. Miss. 2016) (finding GLBA authorizes production of nonpublic personal information when responding to judicial process); F.D.I.C. v Florescue, No. 8:12-CV-2547-T-30TBM, 2014 WL 12617810 at *2 (M.D. Fla. 2014) (noting that GLBA contains exception allowing disclosures in response to judicial process, including authorized subpoenas); and In re Suzuki, No. 14-00516 JMS-KSC, 2014 WL 6908384 at * 4 (D. Haw. 2014) (finding that GLBA does not protect nonpublic information from disclosure in compliance with properly executed subpoena).

Case law does not support FCB's argument that compliance with the subpoena will cause it to violate the GLBA. Accordingly, the subpoena will not be quashed based on the statute.

**F. Texas Finance Code § 59.006**
FCB also argues that it is being asked to release records concerning Bandas and the 108 other individuals and entities without receiving evidence that Edelson has complied with any part of Texas Finance Code § 59.006. Section 59.006(a) "provides the exclusive method for compelled discovery of a record of a financial institution relating to one or more customers but does not create a right of privacy in a record." In relevant part, Section 59.006(b) provides that a financial institution must produce a record in response to a record request only if the institution is given at least 24 days to comply and the requestor pays the institution the reasonable costs of complying. Section 59.006(c) provides that if the affected customer is not a party to the proceeding, the requesting party should give the customer notice of its rights to file a motion to quash and seek the customer's written consent. Section 59.006(d) provides that that if a customer who is not a party does not execute the written consent before the compliance is due, the requesting party may seek the production of any complying documents for *in camera* inspection. The court will decide if the document is relevant and whether portions should be redacted and shall issue a protective order preventing the record from being disclosed to a non-party or used by any person for any purpose other than resolving the dispute at issue in the lawsuit.

Section 59.006 is a procedural statute and does not create a right of privilege or privacy. *British Intern. Ins. Ltd. v. Seguros La Republica, S.A.*, 200 F.R.D. 586, 594 (W.D. Tex. 2000). Nor does it take precedence over federal discovery rules which address compliance with subpoenas. Id. See also *Poindexter v. Bonsukan*, 145 F.Supp.2d 800, 803 (E.D. Tex. 2001) (noting that as a general rule, discovery is a procedural matter governed in federal court by the Federal Rules of Civil Procedure and not by state discovery practice). FCB has provided no authority for its contention that Edelson needs to comply with Section 59.006 of the Texas Financial Code and none was found. Accordingly, the state statute provides no grounds on which to quash the subpoena.

**G. Law Regarding Scope of Subpoena**
A court weighing a motion to quash or modify a subpoena must determine whether the subpoena (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from his or her residence; (3) requires disclosure of protected or privileged material; or (4) subjects a person to undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817-818 (5th Cir. 2004) (citing Fed. R. Civ. P. 45 (3)(A)(i)-(iv) ).

**1. Timing and Protected or Privileged Material**
 *5 FCB first objects to the subpoena because it does not allow sufficient time to comply. However, the deadline for compliance passed while this motion to quash was pending and FCB did not comply with it. Thus, the time for compliance is not presently an issue.

FCB further objects that the subpoena requires disclosure of protected or privileged material, in particular, electronically stored information, metadata, [2] and the proprietary software used to conduct its daily, routine business (Mot. to Quash, D.E. 2 at p. 5). In response, Edelson asserts that it seeks only evidence of wire transfer records and checks from specific people and law firms to and from Bandas. Assuming that Edelson's request is limited to these documents, it does not appear to seek disclosure of protected or privileged material as the material relates to FCB.

**2. Undue Burden**
FCB also claims that the subpoena subjects it to an undue burden. A party moving to quash a subpoena has the burden of showing that complying with the subpoena would be unreasonable and oppressive. *Wiwa*, 392 F.3d at 818 (internal

Case 3:22-mc-00020-L-BH   Document 2-8   Filed 03/18/22   Page 6 of 17   PageID 152

Edelson, P.C. v. Bandas Law Firm, P.C., Not Reported in Fed. Supp. (2018)

citations omitted). The court looks at the facts of the case, such as whether the party needs the documents and the nature and importance of the litigation. *Id.*

> To determine whether the subpoena presents an undue burden, we consider the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. Further, if the person to whom the request is made is a non-party, the court may also consider the expense and inconvenience to the non-party. A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad.

*Id.* The subpoena as written seeks "[a]ll documents, [electronically stored information], file systems, and digital media ... produced in their Native Format with all associated Metadata intact" related to any transfer of funds to or from any Bandas account involving any of 108 individuals and law firms.

Edelson responds that it would be willing to limit its request to records of transactions with the people listed in the subpoena, "particularly wire transfers and checks." If Edelson seeks only copies of wire transfers and checks between Bandas and the 108 individuals and law firms on the list, without the file systems, digital media, and metadata, it would make the request much less burdensome.

Nevertheless, the issues of relevance of the information requested and Edelson's need for the documents remain. FCB estimates that it will take sixty hours to compile the requested records at the bank's customary charge of $25.00 per hour. In addition, the request may require the bank to pay overtime at the time-and-a-half rate and also may require the use of information technology consultants and possibly third party data processing charges for retrieval of old data.

**\*6** Edelson generated the list of 108 individuals and law firms from objections Bandas filed in nine class action lawsuits that either were filed in Illinois or involve an Illinois resident objector (Resp. to Mot. to Quash, D.E. 7 at p. 6 and n. 1). Edelson states that it has reason to believe that Bandas was paid for providing legal services in those cases but does not know "precisely how Bandas gets the money." Edelson seeks the bank records to determine how Bandas was paid. However, because Edelson already knows that Bandas filed the objections and Bandas has agreed that it engaged in the unauthorized practice of law, the information regarding how the firm was paid is of questionable relevance.

In addition, Edelson has made similar allegations against Bandas as part of another lawsuit, *Clark v. Gannett Co., Inc.*, 2018 IL App (1st) 172041, ¶ 25, where Edelson moved, among other things, to strike objections to a class action settlement filed by Bandas and to require Bandas to obtain admission by the Illinois state bar before representing any future clients in Illinois. In that case, the court noted six examples of behavior by Bandas that constituted the practice of law in Illinois. *Id.* at ¶ 75. While the federal district court in the underlying case in which Edelson issued the subpoena is not bound by the findings of Illinois state appellate court, it does not appear that anyone, including Bandas, disputes that Bandas engaged in the unauthorized practice of law in Illinois. It is unclear why Edelson needs additional evidence to prove this allegation.

Edelson's argument that it needs the records to show that Bandas is a vexatious litigant is equally unpersuasive. When determining whether to declare someone a vexatious litigant, a court considers the number and nature of the cases filed. *See factors discussed in Safir*, 729 F.2d at 24. Edelson knows that Bandas filed objections in several cases and determination of his status as a vexatious litigant will involve the factors discussed in *Safir*. It is unclear how the financial records would help Edelson prove that Bandas is a vexatious litigant.

Also, as discussed above, Bandas has agreed to allow judgment to be entered against it, including a finding that it engaged in the unauthorized practice of law in Illinois and an order enjoining it from the further practice of law unless it obtains authorization from the Supreme Court of Illinois.

Case 3:22-mc-00020-L-BH     Document 2-8     Filed 03/18/22     Page 7 of 17     PageID 153

**Edelson, P.C. v. Bandas Law Firm, P.C., Not Reported in Fed. Supp. (2018)**

Given the fact that the only remedy available to Edelson is an order enjoining Bandas from filing more lawsuits and Bandas has already indicated it would agree to such a sanction, the practical value of the documents sought by Edelson remains doubtful.

In response to a request to brief the issue of what relief the subpoenaed documents would provide to Edelson that cannot be obtained by Bandas's agreeing to an injunction, Edelson responded "admissible evidence." (D.E. 15 at p. 2). However, "admissible evidence" is not a form of relief. Edelson also asserts that because it rejected the Rule 68 offer of judgment that it cannot use the offer as evidence of Bandas's culpability, which is true. But the offer of judgment remains open and it is nonsensical to reject an offer of judgment and then seek evidence to prove the allegation of unauthorized practice of law to which Bandas has admitted.

Edelson also argues that the offer of judgment omits any discussion of what constitutes the unauthorized practice of law and that as a result, Bandas can defend itself by arguing that it understood the injunction to prevent conduct different from "whatever he happened to get caught doing." (D.E. 15 at p. 3). However, this would be true regardless of whether Bandas voluntarily agrees to the judgment or it is obtained after Edelson receives records from FCB. Moreover, any injunction against the unauthorized practice of law will proscribe future conduct and will not rely on the records of "how Bandas gets the money." (D.E. 7 at p. 6).

*7 Edelson further argues that any injunction needs to enumerate specific acts that Bandas must not do and that without specifics, an injunction is just an order requiring Bandas to follow the law. Edelson is correct that "obey-the-law" injunctions "depart[ ] from the traditional equitable principle that injunctions should prohibit no more than the violation established in the litigation or similar conduct reasonable related to the violation." *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013). But again, Edelson has not shown how the bank records will help him obtain the specific injunctive relief that he seeks. Edelson knows that Bandas filed objections in nine cases that either were filed in Illinois or involved an Illinois objector (*See* D.E. 7 at p. 6, n. 1). If those acts violated the Illinois Attorney Act because Bandas is not licensed in Illinois, Edelson will be able to propose injunctive language to the court based on what happened in those cases. Notwithstanding Edelson's arguments to the contrary, the bank records showing how Bandas got paid do not appear relevant to Edelson's request for injunctive relief. Accordingly, FCB has met its burden of showing that the subpoena subjects it to an undue burden.

If Bandas withdraws the concession that he engaged in the unauthorized practice of law in Illinois or his agreement to an order enjoining him from practicing law without the permission of the Illinois Supreme Court, as well as to pay any costs and attorney's fees to which Edelson is entitled under Illinois law, Edelson may seek another subpoena of Bandas's bank records.

**CONCLUSION**

While the bulk of FCB's arguments presented in the motion to quash are unpersuasive, the fact that Bandas has agreed to the only remedy to which Edelson is entitled leads to the conclusion that the information sought in the subpoena is irrelevant and unnecessary to Edelson's request for injunctive relief. To require FCB to spend an estimated sixty hours plus additional resources to gather the requested information constitutes an undue burden on FCB. In addition, even without Bandas's agreement, Edelson already has a great deal of evidence showing specific ways in which Bandas engaged in the unlicensed practice of law in Illinois. Accordingly, the motions to quash the subpoena (D.E. 1 and 2) are GRANTED. If Bandas's position changes with regard to his admission that he engaged in the unauthorized practice of law in Illinois or his agreement to having an order enjoining him from practicing law in Illinois until he obtains permission from the Illinois Supreme Court, Edelson may seek another subpoena.

ORDERED this 14th day of December, 2018.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 6588436

**Edelson, P.C. v. Bandas Law Firm, P.C., Not Reported in Fed. Supp. (2018)**

# Footnotes

| | |
|---|---|
| 1 | It is undisputed that Bandas is not licensed to practice law in Illinois. |
| 2 | "Metadata" refers to information embedded in a native file or other data not ordinarily viewable or printable from the application that generated, edited, or modified the native file which describes the characteristics, origins, usage, and validity of the electronic file as well as information generated automatically by the operation of a computer when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such a system (Subpoena Rider, D.E. 2-1). |

**End of Document**                                          © 2022 Thomson Reuters. No claim to original U.S. Government Works.

**Tavernini v. Bank of America, N.A., Not Reported in Fed. Supp. (2014)**
2014 WL 12639116

2014 WL 12639116
Only the Westlaw citation is currently available.
United States District Court,
E.D. Texas, Sherman Division.

Robert TAVERNINI, Plaintiff
v.
BANK OF AMERICA, N.A., et al., Defendants

Case No. 4:12cv420
|
Signed 06/17/2014

**Attorneys and Law Firms**

Peacock, J.B., Jr., David M. Vereeke, Tracy M. Turner, Gagnon Peacock Shanklin & Vereeke, PC, Dallas, TX, Michael Patrick Moore, Brackett & Ellis, Fort Worth, TX, for Plaintiff.

Michael John McKleroy, Jr., Elizabeth Mazzarella, Alan Ferris Arnold, Leslie Amber Utiger, Akerman Senterfitt LLP, Dallas, TX, for Defendants.

### ORDER REGARDING COSTS

DON D. BUSH, UNITED STATES MAGISTRATE JUDGE

**\*1** Now before the Court are the following motions:

- Plaintiff's Objections and Motion to Review the Bill of Costs (Dkt. 71);

- Defendants' Motion for Leave to File Motion for Costs (Dkt. 72); and

- Defendants' Motion for Costs (Dkt. 73)

The Court's March 31, 2014 Final Judgment awarded Defendants their costs herein (*see* Dkt. 67). On April 7, 2014, Defendants filed their Bill of Costs, listing a total of $4,477.43 in costs, including $1,542.00 for the deposition of Robert Tavernini, $216.82 for the deposition of Sirdonea Davis, and $2,218.00 for costs charged by Wells Fargo to Bank of America, N.A. for subpoenaed documents. *See* Dkt. 69.

On April 16, 2014, Plaintiff filed his Objections and Motion to Review the Bill of Costs. In the motion, Plaintiff argues that the per-page charge for documents produced in response to discovery requests—2.00 per page—was unreasonable and unnecessary, especially given Plaintiff's financial resources. Plaintiff also argues that Defendants did not confer about the Bill of Costs prior to submitting it in accordance with the Court's Local Rules.

In response, Defendants filed their Motion for Leave to File Motion for Costs (Dkt. 72), seeking leave to file their motion for costs out of time, and Defendants' Motion for Costs (Dkt. 73), seeking the award of costs in the amount of $4,477.43.

### STANDARD

Defendants prevailed in this matter and were awarded costs. The Federal Rules of Civil Procedure provide:

> **(1)** *Costs Other Than Attorney's Fees.* Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party.... The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

FED. R. CIV. P. 54(d).

This District's Local Rules contain a much more detailed process as to the award of costs:

> (a) A party awarded costs by final judgment or by judgment that a presiding judge directs be entered as final under Fed. R. Civ. P. 54(b) must apply to the clerk for taxation of such costs by filing a bill of costs. Unless otherwise provided by statute or by an order of the presiding judge, the bill of costs must be filed with the clerk and served on any party entitled to such service no later than fourteen days after the clerk enters the judgment on the docket.

Case 3:22-mc-00020-L-BH   Document 2-8   Filed 03/18/22   Page 10 of 17   PageID 156

**Tavernini v. Bank of America, N.A., Not Reported in Fed. Supp. (2014)**
2014 WL 12639116

(b) Procedure for Contested Bill of Costs. Before filing a bill of costs, a party must:

(1) submit the proposed bill of costs to opposing counsel for counsel's review in light of the applicable law; and

(2) if there are any areas of disagreement, meet and confer with opposing counsel in an effort to submit an agreed bill of costs to the court. If the parties have a legitimate dispute on which they cannot agree, the parties have the option of filing either (A) a joint motion indicating areas of agreement and the area(s) of disagreement to be resolved by the court, or (B) a motion by the party requesting costs that indicates areas of agreement and the areas of disagreement to be resolved by the court, to which the opposing party may file a response. Either type of motion must contain a certificate by the party seeking costs certifying compliance with the conference requirements of this rule.

**\*2** E.D. TEX. L. R. CV-54.

### LEAVE TO FILE

The Court first addresses Plaintiff's argument that Defendant's Bill of Costs was not properly filed because it lacked the certificate of conference required under the Local Rules and that, once a conference was had, it was filed out of time. Having considered Defendants' Motion for Leave to File Motion for Costs (Dkt. 72) and Plaintiff's response, the Court finds that consideration of the motion—filed three days after it was due—will not prejudice Plaintiff, especially having considered that the Bill of Costs (although not conferred about in accordance with the Local Rules) was timely filed, that the three-day delay has not impacted the Court's consideration of the fee request in any way, that Defendants have provided an explanation as to the filing date, and that it appears that Defendants acted in good faith in making their motion.

The Court thus finds that Defendants have demonstrated sufficient excusable neglect to consider the filing, and, although the Court cautions counsel to thoroughly review the Local Rules of this Court before making future flings in this District, Defendants' motion for costs will be considered. The motion for leave (**Dkt. 72**) is **GRANTED** in this case, and the matter of Defendants' costs—and Plaintiff's objections to them—are properly before the Court.

### REQUEST FOR COSTS

Next, the Court addresses Plaintiff's Objections and Motion to Review the Bill of Costs (Dkt. 71) and Defendants' Motion for Costs (Dkt. 73). As set forth below, Plaintiff's Objections and Motion to Review the Bill of Costs (**Dkt. 71**) is **GRANTED** in part as to the request for a review and **DENIED** in part as to Plaintiff's objections to the amount of costs requested and Defendants' Motion for Costs (**Dkt. 73**) is **GRANTED**.

Plaintiff objects to $2,218.00 for costs charged by Wells Fargo to Defendant Bank of America, N.A. for subpoenaed documents. Plaintiff also argues that the relative resources of the parties make the bill of costs is unreasonable and unnecessary.

Section 1920(4) permits the taxing of costs for "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). "[S]uch costs are recoverable if the party making the copies has a reasonable belief that the documents will be used during trial or for trial preparation," and the determination of whether such copies are reasonably necessary is a matter within the District Court's discretion. *Rundus v. City of Dallas, Tex.*, 634 F.3d 309, 316 (5th Cir. 2011).

According to Defendants, the subpoenaed documents were the bank statements of Plaintiff and his companies, Awestruck Boarding & Breed Co., Inc., Milestones of Achievement, Inc. and The Ultracentric, Inc., maintained at Wells Fargo. Defendants argue that the bank statements were necessary to rebut several contentions made by Plaintiff, including claims that he tendered a check to reinstate the loan and Plaintiff's claim that his payments were misapplied by Defendant BANA. Defendants also contend that the records were necessary to show that, despite Plaintiff's claim that he was induced by Defendant to default on his loan, he did not have the funds to bring the loan current.

**\*3** Wells Fargo charged Defendants the $2.00 per-page fee. Although the per-page amount is rather high, the Court

**Tavernini v. Bank of America, N.A., Not Reported in Fed. Supp. (2014)**
2014 WL 12639116

agrees with Defendants that, because Wells Fargo—a non-party—was entitled under Section 59.006(b)(2) of the Texas Finance Code [1] to charge for the costs of its "postage, research, delivery and attorney's fees," in addition to the costs of reproduction, the cost paid to Wells Fargo cannot be analogized to the cost for reproduction which a commercial copying service might charge. Of significance to the Court is Defendants' claim that they requested the subpoenaed bank statements from Plaintiff directly but were not able to obtain them that way. The Court finds that the documents subpoenaed from Wells Fargo were necessarily obtained for use in the case and that Defendants had a reasonable belief that the documents would be used during trial or for trial preparation. They are taxable as costs under 28 U.S.C. § 1920(4).

As to the financial hardship to Plaintiff in the costs, a court may, but is not required to, excuse a losing party from paying costs only if he brought suit in good faith *and* can demonstrate at least one of the five factors set forth in *Pacheco v. Mineta,* 448 F.3d 783, 794 (5th Cir. 2006) (listing "(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources"). If a party fails to offer any evidence in support of such factors, he will not overcome Rule 54(d)'s "strong presumption that the prevailing party will be awarded costs." *Wade v. Peterson,* 416 Fed. Appx. 354, 356 (5th Cir. 2011) (citing *Pacheco,* 448 F.3d at 793 and affirming award of costs against party who claimed she was out of work after a car accident). Plaintiff here has not proffered any evidence to make any showing as to his financial resources, and the risk of being charged with costs is a risk of filing suit and not prevailing. As to any claims by Plaintiff of Defendants' "substantial" financial resources, "reducing or eliminating a prevailing party's cost award based on its wealth—either relative or absolute—is impermissible as a matter of law." *Moore v. CITGO Refining and Chemicals Co., L.P.,* 735 F.3d 309, 320 (5th Cir. 2013).

Accordingly, it is hereby **ORDERED** that the bill of costs in the amount of $4,477.43 be granted in favor of Defendants. Defendants are entitled to any writs necessary to receive these costs.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2014 WL 12639116

---

**Footnotes**

1   Section 59.006 of the Texas Finance Code "provides the exclusive method for compelled discovery of a record of a financial institution relating to one or more customers." TEX. FIN. CODE § 59.006(a).

---

**End of Document**   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:22-mc-00020-L-BH   Document 2-8   Filed 03/18/22   Page 12 of 17   PageID 158

Jacquez v. Compass Bank, Not Reported in Fed. Supp. (2015)

2015 WL 11529918
Only the Westlaw citation is currently available.
United States District Court,
W.D. Texas, El Paso Division.

Lilian JACQUEZ, Plaintiff,
v.
COMPASS BANK, d/b/a Bbva Compass, Defendant.

CIVIL NO. EP-15-CV-26-RFC
|
Signed 12/17/2015

**Attorneys and Law Firms**

Enrique Chavez, Jr., Miguel Luis Hernandez, Chavez Law Firm, El Paso, TX, for Plaintiff.

William P. Huttenbach, Jacob M. Stephens, Hirsch & Westheimer, P.C., Houston, TX, for Defendant.

### ORDER ON MOTIONS TO COMPEL

ROBERT F. CASTANEDA, UNITED STATES MAGISTRATE JUDGE

*1 Before the Court are several discovery motions: Plaintiff's motion to compel disclosure of bank customer identity (Doc. 45); Plaintiff's motion to compel deposition testimony regarding conversations witnesses had with in-house counsel regarding complaints filed by Plaintiff (Doc. 43); Defendant's motion to compel deposition testimony regarding amount Plaintiff will be requesting for damages (Doc. 35); and Defendant's motion to compel responses to interrogatories, requests for production, and requests for admissions. (Doc. 32). On December 4, 2015, at 1 p.m., a hearing was held on the pending discovery motions. Prior to the hearing, the Court ordered and the parties filed a joint notice detailing the parties' attempt to reach a resolution of the issues without the Court's assistance, identifying issues that had been resolved, and providing the position of each party on the remaining issues. Some issues were ruled on in open court, but most of the issues were taken under advisement. This Order reflects the Court's rulings on all the issues raised.

### I. Plaintiff's motion to compel deposition testimony regarding conversations witnesses had with counsel regarding complaints filed by Plaintiff. (Docs. 43)

Plaintiff's motion to compel the deposition testimony of Compass Bank Branch Manager Carlos Fernandez regarding conversations he had with Compass Bank's legal department is denied.

Plaintiff's motion to compel the deposition testimony of former Compass Bank Branch Manager Jose Ortiz regarding conversations he had with Mr. Huttenbach, as his attorney, in preparation for the deposition, is denied.

### II. Defendant's motion to compel Plaintiff's deposition testimony regarding amount Plaintiff will be requesting for mental anguish damages. (Docs. 35)

Defendant's motion to compel further deposition testimony from Plaintiff regarding the amount Plaintiff will be requesting for mental anguish damages is denied.

### III. Defendant's motion to compel responses to interrogatories, requests for production and admissions. (Doc. 32)

As a general matter, the Court reminds both parties of their continuing responsibility under Federal Rule of Civil Procedure 26(e) to supplement or correct their responses "in a timely manner if the party learns that in some material respect the response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or as ordered by the court." Fed. R. Civ. P. 26(e).

Further, with respect to interrogatories, under Rule 33(b)(3) each interrogatory must be answered separately and fully in writing. Fed. R. Civ. P. 33(b)(3). Rule 33(d) allows that in some cases interrogatories may be answered by producing documents. However, that rule requires that this only be done when "the burden of deriving or ascertaining the answer [is] substantially the same for either party" and that even where that is true, the documents produced in lieu of a written answer must be specified "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d). Thus, "see documents produced" is not an appropriate response to

Case 3:22-mc-00020-L-BH   Document 2-8   Filed 03/18/22   Page 13 of 17   PageID 159

Jacquez v. Compass Bank, Not Reported in Fed. Supp. (2015)

an interrogatory. Both parties are reminded of this rule and are expected to provide amended/supplemental responses to interrogatories where their answers fail to comply with the rules, regardless of whether the Court specifically notes such deficiency regarding the contested interrogatories below.

 *2  Additionally, with respect to requests for production, Rule 34(b)(2)(E) requires that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request[.]" Fed. R. Civ. P. 34(b)(2)(E). The Court expects the parties to comply with this rule and further expects the parties to identify in their written responses the labels or tabs of the documents responsive to the specific request for production. If there are no responsive documents to specify, the party should so state. Thus, both parties should provide amended/supplemental responses to comply with this Rule and the Court's expectation as necessary.

Based on the parties' pre-hearing joint notice and argument at the hearing on December 4, 2015, the Court denies as moot Defendant's motion to compel with respect to Interrogatories numbered 2, 3, 11, 12, and 13; Requests for Production numbered 24, 25, 28, 32, 33, and 34; Requests for Admission numbered 23 and 24; and providing initial disclosures.

With respect to the remaining issues, still in contention, the Court rules as follows:

> **Interrogatory 1**: Defendant's motion to compel is granted to the extent that Plaintiff needs to comply with Rule 33(d).
>
> Plaintiff supplemented by reference to Plaintiff's deposition and documents generally. (Doc. JN at 7) Defendant offered to submit a new interrogatory limiting the question to the dates and times that Plaintiff met with Belichesky at Compass Bank. *Id.* In her response to Defendant's motion, Plaintiff provided the portion of the transcript from Plaintiff's deposition reflecting that she met with Belichesky at Compass Bank either July 7th or 11th (Doc. 39-1:10) and that Plaintiff never had any other meetings at Compass Bank. (Doc. 39-1:14) Thus, for the proposed narrower interrogatory, the answer has been made known through discovery and identified by reference to Plaintiff's deposition transcript. With respect to the initial, broader interrogatory, however, Plaintiff's reference to "documents" generally does not comply with Rule 33(d).

Thus, Plaintiff is ordered to supplement her response to comply with Rule 33(b)(3) and (d).

**Interrogatory 4:** Defendant's motion to compel is denied.

**Interrogatory 5:** Defendant's motion to compel is granted. Plaintiff needs to comply with Rule 33(b)(3) and (d).

**Interrogatory 6:** Defendant's motion to compel is denied.

**Interrogatory 7:** Defendant's motion to compel is granted. Plaintiff needs to comply with Rule 33(b)(3) and (d).

**Interrogatory 8:** This interrogatory asks for the identity of each medical provider, including mental health professionals, that Plaintiff has seen in the past five years and the reason for seeing that provider. (Doc. 32-1:6) Plaintiff objected that the request was vague, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence; Plaintiff also asserted medical record confidentiality under Texas Occupational Code Section 159.002 and Texas Rules of Evidence 509(c) and 510(b). *Id.* Plaintiff filed a supplemental answer to the interrogatory after Plaintiff testified at her deposition that she had seen a medical provider to treat her mental anguish. (Doc. 32:4) Defendant contends that if Plaintiff had other medical issues that truly caused her alleged symptoms of mental anguish, Defendant should be able to discover such information. (Doc. 50-1:12) Plaintiff stands by her objections except to the extent she has responded. (Doc. 50-1:12-13) Defendant seeks a discovery sanction barring Plaintiff from seeking mental anguish damages. (Doc. 32:4-5)

Because this case is before the Court on diversity jurisdiction, Texas state law evidentiary privileges and confidentiality apply. *In re Avantel, SA,* 343 F.3d 311, 318 n. 6 (5th Cir. 2003). Where Plaintiff relies on her physical, mental, or emotional condition as a part of her claim, the physician-patient privilege does not apply. Tex. R. Evid. 509(e)(4). Where Plaintiff asserts that she sought and received treatment for symptoms of alleged mental anguish, Plaintiff cannot refuse to disclose the medical records relevant to medical attention sought for symptoms of the alleged mental anguish. *Midkiff v. Shaver,* 788 S.W.2d 399 (Tex. App. —Amarillo, 1990). However, medical records and information unrelated to Plaintiff's claim for mental anguish remain privileged and not subject

Case 3:22-mc-00020-L-BH   Document 2-8   Filed 03/18/22   Page 14 of 17   PageID 160

**Jacquez v. Compass Bank, Not Reported in Fed. Supp. (2015)**

to discovery. *Groves v. Gabriel*, 874 S.W.2d 660 (Tex. 1994).

**\*3** Thus, Plaintiff's objections are sustained in part and overruled in part. Defendant's motion to compel is granted to the extent that Plaintiff's reason for seeing the provider was to obtain treatment for symptoms she has alleged as part of her claim for mental anguish damages and to the extent that such symptoms were noted or discussed with the provider, even if not attributed to her experience with Belichesky, Ellis, or Compass Bank. Defendant's motion to compel, including the requested discovery sanction barring Plaintiff from seeking mental anguish damages, is otherwise denied.

**Interrogatory 9:** Defendant's motion to compel is granted. Plaintiff needs to comply with Rule 33(d).

**Interrogatory 10:** Defendant's motion to compel is granted. Plaintiff needs to comply with Rule 33(d).

**Interrogatory 14:** Defendant's motion to compel is denied. Plaintiff, however, is reminded of her duty to supplement.

**Interrogatory 15:** Defendant's motion to compel is denied.

**Interrogatory 16:** Defendant's motion to compel is denied. Plaintiff, however, needs to comply with Rule 33(d).

**Request for Production 1:** Defendant's motion to compel is denied. Plaintiff's duties to specify responsive documents under Rule 34 and to supplement, however, remain.

**Request for Production 6:** Defendant's motion to compel is granted. Plaintiff needs to comply with Rule 34.

**Request for Production 12:** Defendant's motion to compel is granted. Plaintiff needs to comply with Rule 34.

**Request for Production 15:** Defendant's motion to compel is denied.

**Request for Production 21:** Defendant's motion to compel is denied.

**Request for Production 23:** Defendant's motion to compel is denied.

**Request for Production 26:** Defendant's motion to compel is granted. Plaintiff needs comply with Rule 34.

**Request for Production 27:** Plaintiff's objections are sustained. Defendant's motion to compel is denied.

**Request for Production 30:** Plaintiff's objections are overruled. Defendant's motion to compel is granted. Plaintiff needs to comply with Rule 34.

**Request for Production 31:** Plaintiff's objections are overruled. Defendant's motion to compel is granted. Plaintiff needs to comply with Rule 34.

**Request for Admission 17:** Defendant's motion to compel is denied. Defendant is granted leave to submit a new request for admission to clarify that Plaintiff wrote no checks made payable directly to Compass Bank.

Defendant also requests leave to take additional depositions based on the evidence produced in discovery.

Defendant seeks leave to depose Plaintiff for a third time to ask additional questions regarding her mental anguish damages calculation, the ASEO check, and related amended IRS tax return. Defendant's request for leave is denied.

Defendant seeks leave to depose Mitchell Esper based on Plaintiff's second supplemental answer to Defendant's interrogatory number six, that Esper provided legal services through Compass Bank. Such supplemental response was dated November 25, 2015, after the discovery deadline of October 15, 2015 (Doc. 28, gavel granted extension of time). Defendant's request for leave is granted.

Defendant seeks leave to depose Plaintiff's doctor, Dr. Azalia Martinez. Defendant was aware that the doctor was a potential witness as early as August 6, 2015, when Plaintiff supplemented her answer to interrogatory number 15. (Doc. 32-4:2-4) Defendant at some point prior to October 15, 2015, obtained Plaintiff's medical records from Dr. Martinez. (Doc. 32:6) Defendant had ample opportunity to depose the doctor before the close of discovery. *See* Fed. R. Evid. 26(B)(2)(c)(ii). Defendant's request for leave is denied.

**\*4** Defendant seeks leave to depose Plaintiff's herbalist. Defendant was also aware that the herbalist was a potential witness as early as August 6, 2015. (Docs. 32:6, 32-4:2-4) Defendant re-subpoenaed the herbalist's records after Plaintiff's second deposition on October 14, 2015. (Docs.

42-2:2; 50-1:8) Defendant had ample opportunity to depose the doctor before the close of discovery. *See* Fed. R. Evid. 26(B)(2)(c)(ii). Defendant's request for leave is denied.

### IV. Plaintiff's motion to compel disclosure of bank customer's identity (Doc. 45)

Plaintiff's motion to compel disclosure of a bank customer's identity is granted.

Through two witness depositions, Plaintiff discovered the existence of another bank customer who had worked with Belichesky and had met with him at Compass Bank. Upon the advice of counsel, the deponents refused to identify the bank customer. Although it appeared that there may be two additional bank customers, Defendant's attorney, after consulting with deponents, determined that both deponents' answers related to the same bank customer.

Texas Finance Code Section 59.006 provides the exclusive method for compelled discovery of a record of a financial institution relating to one or more customers. Section 59.006 requires the requesting party to send notice and a request for release to the bank customer whose records are sought. However, in this case, because it is the bank customer's identity and contact information which the Plaintiff seeks, ordering Plaintiff to provide such notice to the customer is illogical. The Court orders Defendant to send the relevant bank customer Plaintiff's request for disclosure of the customer's name and contact information, notice of the customer's rights, and a request for written consent to disclose, as required by Section 59.006. The Court additionally orders that Defendant file a certificate of service indicating that this was done. Further, the Court orders Plaintiff to pay Defendant's reasonable costs in both serving the bank customer with the notice and researching and providing the record containing the customer's name and contact information.

Further, Defendant contends that it is rare for a customer to execute the requested written consent. Section 59.006 provides that in the absence of written consent, the tribunal may review the requested record *in camera*, determine its relevance and which portions, if any, should be produced, and order those portions produced subject to a protective order. The Court at this time makes the determination that the bank customer whom deponents testified met with Belichesky at Compass Bank may have personal knowledge of facts relevant to this cause such that the customer's name and contact information should be produced to Plaintiff. Thus, should the customer not provide the required written consent within twenty-four days of being provided notice, Defendant is ordered to produce such information to Plaintiff without the necessity of further motions to this Court. Consequently, the Court additionally enters the following protective order at this time: the bank customer's identification and contact information may not be disclosed to anyone not a party to the proceeding and may not be used for any purpose other than resolving the dispute before the court in this cause.

### V. Deadline to comply with this Order

The parties shall comply with this order expeditiously. The Court recognizes that Texas Finance Code Section 59.006 requires that a request for customer records provide twenty-four days to produce the records. Thus, Defendant will have twenty five days to provide Plaintiff with the relevant customer's name and contact information. The Court anticipates that Plaintiff may want to contact and possibly depose the bank customer and provides an additional thirty days in which to do so. Thus, compliance should be completed with respect to all aspects of this order no later than February 12, 2016.

**\*5**  It is so **ORDERED**.

**SIGNED this 17th day of December, 2015.**

**All Citations**

Not Reported in Fed. Supp., 2015 WL 11529918

---

**End of Document**     © 2022 Thomson Reuters. No claim to original U.S. Government Works.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY LLC | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|   vs. | ) | Case No. 4:04CV425 HEA |
| | ) | |
| LOREN DAVID, | ) | |
| | ) | |
|     Defendant. | ) | |

## ORDER

This matter is before the Court on defendant's Motion to Quash Subpoena, [# 51]. Plaintiffs oppose this motion and have filed a memorandum supporting their position. For the reasons set forth below, the Motion is denied.

Defendant moves, *pro se*, to quash the subpoena for the production of documents served on Wells Fargo Bank by plaintiffs. Defendant contends that the documents requested are privileged and irrelevant. Defendant further contends that Dawn David, a nonparty, was not given notice nor served a copy of the "request."

As plaintiffs argue, while financial information may be sensitive in nature, it is not privileged nor protected to the extent that it is not discoverable. Defendant has provided no authority to the contrary.

Nor is defendant's position that the information is irrelevant persuasive. The requested information regarding checks is precisely the type of information which

may lead to relevant evidence regarding plaintiff's claims. As such, the information is discoverable under the Federal Rules of Civil Procedure.

Finally, defendant's reliance on the "Finance Code" is misplaced. Because this action is pending in Federal Court and pertains to federal law, state law is inapplicable, particularly the law of a state other than Missouri. Thus, plaintiff was not required to satisfy the requirements of the Texas Finance Code with respect to notice to a nonparty.[1]

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion to Quash Subpoena, [# 51], is denied.

Dated this 2nd day of March, 2005.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

---

[1] The Court also notes that plaintiff is in possession of 151 pages of monthly statements of defendant. These statements were used to identify the specific checks plaintiff now requests. The Court, therefore agrees with plaintiff that since defendant had no objection to the production of the statements, his objection to production of the specific checks is extremely unpersuasive.